THE HONORABLE Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD L. AHEARN, Regional Director of the
Nineteenth Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD

        Petitioner

        v.

INTERNATIONAL LONGSHORE and WAREHOUSE
UNION, LOCAL 21
        Respondent

        and

INTERNATIONAL LONGSHORE and WAREHOUSE
UNION, LOCAL 4
        Respondent

)
)
)
)
) Civil No. 3:11-CV-05684
)
)
)
) MEMORANDUM OF POINTS
) AND AUTHORITIES IN
) SUPPORT OF PETITIONER'S
) MOTION TO FIND
) RESPONDENTS
) IN CONTEMPT AND TO SIGN
) PROPOSED ORDER
) ADJUDICATING
) RESPONDENTS IN CIVIL
) CONTEMPT
)
)
)
)

ANNE P. POMERANTZ, Regional Attorney, Region 19
DANIEL SANDERS, Attorney, Region 19
JOHN FAWLEY, Attorney, Region 19
HELENA FIORIANTI, Attorney, Sub-Region 36

NATIONAL LABOR RELATIONS BOARD, Region 19
915 Second Avenue, Room 2948
Seattle, Washington  98174, Telephone:  (206) 220-6301

Memo of Points and Authorities- Page 1
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

TABLE OF CONTENTS

I.      Statement of Case ........................................................................................ 2

II.     Statement of Facts ...................................................................................... 5

        A.      Background ..................................................................................... 5

        B.      Respondents Engage in Mass Picketing and Blocking
                Of the Train in Vancouver, Washington Destined for EGT's
                Facility ............................................................................................ 5

        C.      Respondents and Their Supporters Engage in Further Mass
                Picketing and Blocking of the BNSF Train at the Entrance to
                EGT's Facility ................................................................................. 7

        D.      Respondents' Violent Conduct Escalates and They Damage
                Both the BNSF Train and EGT's Property........................................ 8

III.    Argument.................................................................................................... 10

        A.      Applicable Principles of Civil Contempt ...................................... 10

        B.      Respondents' Misconduct Violates the Temporary
                Restraining Order and Act ............................................................ 12

        C.      Contempt Sanctions ..................................................................... 14

                1.      Cease and Desist Order; Affirmative Purgation Order;
                        Remedies; Compliance Report; Discovery....................... 14

                2.      Propective Fines ............................................................... 14

                3.      Compensatory Remedies................................................... 15

                4.      Interim Relief .................................................................... 16

IV.     Conclusion ................................................................................................ 18

Memo of Points and Authorities- Page i
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1
2

Table of Authorities

3    Cases:
4
5    Federal Trade Commision v. Affordable Media, LLC,
6        179 F.3d 1228, 1239 (9th Cir. 1999)................................................................11
7    Gompers v. Buck's Stove & Range Co.,
8        221 U.S. 418, 450 (1911) ...............................................................................10
9    Hoffman v. ILWU, Local 10,
10       492 F.2d 929, 933 (9th Cir. 1974)....................................................................17
11   Humphrey v. Southside Electric Cooperative, Inc.,
12       104 L.R.R.M. (BNA) 2589, 2592 (E.D. Va 1979) .............................................15
13   In re Bennett,
14       298 F.3d 1059, 1069 (9th Cir. 2002).................................................................11
15   In re Crystal Palace Gambling Hall, Inc.,
16       817 F.2d 1361, 1365 (9th Cir. 1987).................................................................11
17   Iron Workers Dist. Council of the Pac. NW. v NLRB,
18   913 F.2d 1470, 1477 (9th Cir. 1990) .................................................................13
19   Jim Walters Resources, Inc. v. International Union, United Mine Workers of America,
20       609 F.2d 165, 168 (5th Cir. 1980)....................................................................11
21   Madden v. Grain Elevator, Flour & Feed Mill Workers,
22       334 F.2d 1014, 1020 (7th Cir. 1974).................................................................17
23   Maness v. Meyers,
24       419 U.S. 449, 458 (1975) ...............................................................................11
25   Muniz v. Hoffman,
26       422 U.S. 454 (1975) ......................................................................................17
27   NLRB v. A-Plus Roofing
28       39 F.3d 1410, 1419 (9th Cir. 1994)..................................................................15
29   NLRB v. Int'l Assn'n of Bridge, Structural and Ornamental Ironworkers, Local 86,
30       79 LRRM 2723, 2724 (9th Cir. 1972)................................................................14
31   NLRB v. Iron Workers Local 433,
32       169 F.3d 1271, 1221 -22 (9th Cir. 1999)...........................................................15
33   NLRB v. Miramer of Cal., Inc,.
34       601 F.2d 422, 425 (9th Cir. 1979)....................................................................13
35   NLRB v. Sequoia District Council of Carpenters,
36       568 F.2d 628,636 (9th Cir. 1977).....................................................................16
37   NLRB v. Service Employees Local 77, 123,.
38       L.R.R.M. 3213, 3214-3215 (9th Cir. 1986).......................................................16
39   NLRB v. Teamsters Local 85,
40       101 L.R.R.M. (BNA) 2933, 2934-35.................................................................14
41   NLRB v. Teamsters Local 327,
42       592 F.2d 921, 923 (6th Cir. 1979)....................................................................18
43   NLRB v. Trans Ocean Export Packing, Inc.,
44       473 F.2d 612 (9th Cir. 1973)) .........................................................................16
45   Perfect Fit Industries, Inc. v. Acme Quilting Co.,.
46       673 F.2d 53, 57 (2d Cir.) cert. denied 459 U.S. 832 (1982)...............................15

Memo of Points and Authorities- Page i
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

Reno Air Racing Assn. v. McCord,
    452 F.3d 1126, 1130 (9th Cir. 2006) ........................................................................ 11
Securities and Exchange Commission v. First Finacial Group of Texas, Inc.,
    659 F.2d 660, 669 (5th Cir. 1981) ............................................................................ 10
Sheet Metal Workers v. EEOC,
    478 U.S. 421 (1986) ................................................................................................ 16
Stone v. City and County of San Francisco,
    968 F.2d 850, 856 (9th Cir.1992) ............................................................................ 10
Szabo v. U.S. Marine Corp,,
    819 F.2d 714, 718 (7th Cir 1987) ............................................................................ 11
United Mine Workers of America v. Bagwell,
    512 U.S. 821, 838 (1994) ........................................................................................ 16
United States v. United Mine Workers of America,
    330 U.S. 258, 293, 303, 304 (1947) .................................................................. 10, 13
Whittaker Corp. v. Execuair Corp.,
953 F.2d at 510, 516 (9th Cir. 1992)            15

Statutes

29 U.S.C. § 157(7) ....................................................................................... Passim
29 U.S.C § 160(j) ......................................................................................... Passim
29 U.S.C § 160(l) ......................................................................................... Passim

Memo of Points and Authorities- Page ii
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

# I.   STATEMENT OF THE CASE

Counsel for the Petitioner moves this Court, for and on behalf of the National Labor Relations Board ("Board"), to adjudicate International Longshore and Warehouse Union, Local 21 ("Respondent Local 21"), and International Longshore and Warehouse Union, Local 4 ("Respondent Local 4") (jointly, "Respondents"), in civil contempt of this Court and to grant other civil relief for having violated and disobeyed the Temporary Restraining Order issued by this Court on September 1, 2011,[1] pursuant to Sections 10(j) and 10(l) of the National Labor Relations Act, as amended ("the Act") (29 U.S.C. §§ 160(j) and 160(l)).  The Board also seeks further interlocutory relief pursuant to the Court's general jurisdiction to enforce the Preliminary Injunction order that it issued on September 8 pursuant to Section 10(j) of the Act.  In support thereof, Petitioner respectfully shows as follows.

On August 31, Petitioner (Richard L. Ahearn, Regional Director, Region 19, of the Board) filed with this Court a Petition for Temporary Restraining Order and Preliminary Injunction under Sections 10(j) and 10(l) of the Act seeking injunctive relief enjoining and restraining Respondents from engaging in certain conduct violative of the Act, and directing Respondents to take certain ameliorative action.

On September 1, this Court, by United States District Court Judge Ronald B. Leighton of the Western District of Washington, issued a Temporary Restraining Order granting that portion of the Petition for a Temporary Restraining Order under Sections 10(j) and 10(l) of the Act (the "Restraining Order").  The Restraining Order enjoined and restrained Respondents, their officers, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, from engaging with an unlawful object in the following unlawful conduct in

---

[1]   All dates occurred in 2011 unless otherwise indicated.

Memo of Points and Authorities- Page 2
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1    furtherance of their dispute regarding work performed at or related to the EGT facility: 1) picket

2    line violence; 2) threats; 3) property damage; 4) mass picketing;  5) blocking of ingress and

3    egress at the EGT facility located in Longview, Washington; and 6) in any other manner, or by

4    any other means, furthering their unlawful object, restraining or coercing employees of EGT,

5    General Construction, or any other person doing business in relation to the EGT facility in the

6    exercise of the rights guaranteed them by Section 7 of the Act (29 U.S.C. § 157).

7           Since about September 7, Respondents Locals 21 and 4, as well as those acting in

8    concert with them from the International Longshore Warehouse Union (the "International") and

9    sister Locals, as well as their officers, agents, servants, employees, attorneys, and members and

10   other persons acting in concert or participation with them, have disregarded their obligations

11   under the Restraining Order, despite efforts of Petitioner and local law enforcement officials to

12   secure compliance with that Order.  Respondents' conduct, which includes blocking the ingress

13   and egress of a train attempting to make the delivery of products to EGT's facility; picket line

14   violence; mass picketing; and causing extensive property damage, demonstrates clear contempt

15   for this Court's authority.  Respondents' contumacious conduct, in addition to flouting the

16   authority of this Court, interferes with employees' rights under the Act, thereby subverting the rule

17   of law.  Accordingly, Petitioner orally moved on September 8 that this Court find Respondents,

18   their officers, agents, servants, employees, attorneys, and all members and persons acting in

19   concert or participation with them (including the International) in contempt of the Restraining

20   Order and to issue an appropriate purgation order, as submitted in writing to the Court.

21          On September 8 this Court, by United States District Court Judge Ronald B. Leighton,

22   also issued a Preliminary Injunction under Section 10(j) of the Act ("Preliminary Injunction").  The

23   Preliminary Injunction enjoins and restrains the International, Locals 21 and 4, their officers,

1   agents, servants, employees, attorneys, and all members and persons acting in concert or

2   participation with them, including their sister locals, from engaging in the following unlawful

3   conduct in furtherance of their dispute regarding work performed at or related to the EGT facility:

4   1) picket line violence; 2) threats; 3) property damage; 4) mass picketing;  5) blocking of ingress

5   and egress at the EGT facility located in Longview, Washington; 6) impeding rail or ship traffic

6   anywhere destined to or from EGT's facility; and 7) in any other manner, or by any other means

7   restraining or coercing employees of EGT, General Construction, or any other person doing

8   business in relation to the EGT facility in the exercise of the rights guaranteed them by Section 7

9   of the Act.[2]

10          As set forth on its face, the Court's Preliminary Injunction remains in effect until the Court

11   issues its final preliminary injunction order.[3]  Given the nature of Respondents' violations of the

12   Act and their blatant violation of the Restraining Order, Petitioner requests that this Court extend

13   the duration of its purgation order to the date to which the final Preliminary Injunction order

14   extends.

15

16

17

18       II.       STATEMENT OF FACTS

19       A.       Background

20          EGT, a grain exporter, depends on the delivery of product to its facility in Longview to

21   conduct its business.   On July 13, hundreds of picketers and protestors affiliated with

---

[2]  As noted in the motion filed on September 12, the Preliminary Injunction, despite the deferral of a decision on the §10(l) portion at this juncture, inadvertently contains language going to "object."  It is assumed for purposes herein that said inclusion was due to ministerial oversight.

[3] It appears from the Court's Preliminary Injunction that the final injunctive order will issue at some point after

Memo of Points and Authorities- Page 4
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1   Respondents blocked a 107-car Burlington Northern and Santa Fe ("BNSF") train that was

2   attempting to deliver corn to the EGT facility by sitting or standing on or near the tracks at the

3   EGT rail entrance and parking a car on the tracks.  The train was forced to turn around and sat in

4   a rail yard in Pasco, Washington, due to Respondents' refusals to give assurances that its agents

5   would not block the train if it attempted delivery again.  The train sat for several weeks in the rail

6   yard, unable to unload its product due to Respondents' misconduct.  Finding that Respondent's

7   actions were tantamount to holding the train "hostage," this Court issued its Temporary

8   Restraining Order on September 1, in part, to prohibit Respondents and their agents from

9   engaging in any further mass picketing and blocking of ingress and egress to EGT's facility, or by

10  any other means restraining or coercing the employees of EGT, General Construction, or any

11  other person doing business in relation to EGT's facility.[4]   As shown below, however,

12  Respondents and their agents almost immediately defied this Court and refused to comply with

13  the Temporary Restraining Order in place.

14      **B.  Respondents Engage in Mass Picketing and Blocking of the**
15          **Train in Vancouver, Washington, Destined for EGT's Facility**
16
17              As set forth in Petitioner's reply brief filed with the Court on September 7, with the

18  Temporary Restraining Order in place, EGT was determined to make a renewed attempt to have

19  BNSF deliver the cargo in its 107-car train that had been sitting for several weeks.   When

20  inspecting the train on September 4, representatives of BNSF discovered that approximately 72

21  air hoses on the train had been intentionally cut and angle cocks moved into improper positions

---

completion of all matters the Court has deemed attendant to the merits of the §10(l) Petition.

[4]    The mass picketing and blocking of the train was only one of dozens of incidents of misconduct that were engaged in by Respondents and their agents that were detailed in Petitioner's Memorandum in Support of its Petition and that led this Court to grant Petitioner's request for a Temporary Restraining Order and Preliminary Injunction.

1   (Declaration of Jacqueline Waters[5]).  Once repaired, the train set out on its journey from the rail

2   yard in Pasco to EGT's facility at the Port of Longview.

3            Upon reaching Vancouver, Washington, around 7 a.m. on September 7, however,

4   the train was again blocked by a group of protestors who had congregated on the tracks.

5   Although there were approximately 50 protestors blocking the tracks initially, the number quickly

6   increased to 100 protestors.   While the train remained blocked, the number of protestors

7   continued to increase to a peak of approximately 250 people.   Several of the protestors held

8   signs denoting their affiliation with Respondents.  (Incident Report of Vancouver Police Officer

9   Mike Knotts[6]; declaration of Mark Geers[7]; NWCN.com article[8]).

10           When the Vancouver police arrived, the protestors, despite their signs, stated that

11   they were not affiliated with Respondents (declaration of Geers; September 7 article from *The*

12   *Columbian* showing signs[9]).   Moreover, as established by the declaration of Brad Hansen,

13   several officers of Respondents' Local 21 and 4 were present to encourage the blocking of the

14   train.  Hansen is familiar with and able to identify those officers based on his prior employment

15   with United Grain (declaration of Brad Hansen[10]; see also Knotts' incident report identifying Dan

16   Coffman, Respondent Local 21's president, as being present).

17           The International's president, Robert McEllrath, was also among the group of

18   protestors blocking the tracks.   Indeed, McEllrath identified himself as the leader of the

19   protestors.  McEllrath stated that the mass of picketers and protestors would not permit the BNSF

20   train destined for EGT's facility to pass through.  When presented with the Court's Temporary

---

[5] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 52.
[6] Attached to this Memorandum as Exhibit 1.
[7] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 55.
[8] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 55
[9] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 55.
[10] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 51.

1    Restraining Order, McEllrath stated that it did not apply because he was representing the

2    International, not Respondents Locals 21 and 4, and that it applied only to Longview and not

3    Vancouver.  (Knotts incident Report[11]; Declaration of Geers[12])

4           Although the protestors did allow other trains to pass through on the tracks, the

5    protestors remained blocking the tracks until approximately noon so that the train destined for the

6    EGT facility could not move.  At that time, a large contingent of the protestors removed

7    themselves from the tracks and walked to Respondent Local 4's union hall a few blocks away.

8    About an hour later, the BNSF train was permitted to resume its journey out of Vancouver.

9    (Knotts' incident report).

10    **C.  Respondents and Their Supporters Engage in Further Mass**
11          **Picketing and Blocking of the BNSF Train at the Entrance to**
12          **EGT's Facility**
13
14    After leaving Vancouver, the train headed towards EGT's facility at the Port of Longview.

15    Around 3:00 p.m. another group of approximately 300 protestors sat on tracks just outside of

16    EGT's facility, effectively blocking the BNSF from entering the EGT facility.  Protestors shouted

17    "ILWU" and wore clothing with ILWU insignia emblazoned on it.  Law enforcement officers in riot

18    gear were summoned to the scene due to the protestors' unlawful actions.  Despite several

19    announcements from officers to the protestors to disperse because they were violating the law,

20    protestors refused to follow the officers' orders and remained on the tracks.  Officers then began

21    arresting some of the protestors who had refused to leave.

22           As the officers began arresting the protestors, a group of protestors charged at them and

23    forced the officers to retreat.  Several of the protestors screamed at the officers and at least one

24    protestor, a Respondent Local 21 official who was later arrested, yelled obscenities at the officers

---

[11] Attached to this Memorandum as Exhibit 1.

Memo of Points and Authorities- Page 7
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1   and refused to leave the tracks.  Although a majority of the protestors eventually left the tracks,

2   police were required to arrest a group of approximately 15 protestors who had refused to leave in

3   order to clear the tracks.   The BNSF train was then able to move to the EGT facility at

4   approximately 7 or 8:30 that evening.  (Arrest report and officer's affidavit with respect to arrest of

5   Shelly Porter[13]; declaration of Jerry Gibson[14]; September 8 *Wall Street Journal* article[15]).

6   **D.   Respondents' Violent Conduct Escalates and They Damage Both the**
7        **BNSF Train and EGT'S Property**
8
9        Arrival of the train at EGT's facility did not quell further actions by Respondents and

10  their agents.  In fact, their gross misconduct escalated as the situation became increasingly

11  malevolent.

12       Around 4:30 in the morning of September 8, numerous protestors arrived by vehicle

13  at EGT's facility and stormed the gates.  They were armed with weapons such as baseball bats

14  and shears.[16]  Charles Cadwell, a security guard employed at EGT's facility, recognized many of

15  the protestors as Respondent Local 21 members  based on his earlier employment with

16  Weyerhaeuser, as well as previous encounters with the protestors during the prior two months.

17  (Arrest report for Ronald Stavas; anticipated testimony.).

18       Cadwell, who was unarmed, approached a group of protestors in his security vehicle

19  and was quickly surrounded by the mob so that he could not proceed further.  Cadwell told the

20  protestors that they could not do this and would be arrested if they did not leave.  Instead of

21  leaving, a protestor reached into the vehicle and began pulling on Cadwell's arm.  Other

22  protestors joined in and Cadwell was violently pulled out of his vehicle.  As one protestor

---

[12] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 55.
[13] Attached to this Memorandum as Exhibit 1.
[14] Petitioner has previously filed this document with this Court.  The Court has numbered it as Document 55.
[15] Attached to this Memorandum as Exhibit 3.

Memo of Points and Authorities- Page 8
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1    approached him with a 3-foot metal pipe and appeared about to strike him, Cadwell yelled that

2    they were on camera and the protestor would be arrested.  The protestor then yelled at Cadwell,

3    "fuck you, I am not here to get you, I am here to get the train."  Cadwell recognized the protestor

4    as an ILWU picketer from earlier encounters and the picketer was later arrested for burglary,

5    assault, and criminal sabotage.  (Arrest report for Stavas; anticipated testimony).

6         Other protestors began throwing rocks at Cadwell who, fearing for his safety,

7    retreated and ran to the guard house.  There he discovered that the window at the guard house

8    had been smashed.  Other protestors then secured the vehicle that Cadwell had been driving and

9    drove it into the ditch, resulting in extensive damage to the vehicle.  (anticipated testimony).

10   Meanwhile, the protestors caused other extensive damage at the facility.  The police investigation

11   revealed several broken windows on EGT's buildings, damage to the BNSF train's air lines, and

12   large amounts of grain dumped from the rail cars.  (Arrest report for Stavas; September 8 *Seattle*

13   *Times* article attached to the Memorandum as Exhibit 4).

14   III.    ARGUMENT

15       A.    Applicable Principles of Civil Contempt
16
17       The Court's issuance of injunctive relief enjoining and restraining Respondents from

18   engaging in proscribed conduct has been in effect at all times since September 1.  The

19   Temporary Restraining Order issued on September 1, and the Preliminary Injunction order issued

20   on September 8.  It is well established that an "order issued by a court with jurisdiction over the

21   subject matter and person must be obeyed by the parties until is it reversed by orderly and proper

22   proceedings."  *United States v. United Mine Workers of America,* 330 U.S. 258, 293 (1947).  This

23   is essential because the "interests of orderly government demand that respect and compliance be

---

[16] In fact, as the photo on the front page of the *Seattle Times* demonstrates, some protestors had used their baseball

Memo of Points and Authorities- Page 9
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1  given" to such orders, and a party who "willfully refuses his obedience, does so at his peril." *Id.* at

2  303.  "No one, no matter . . . how righteous his private motive, can be judge in his own case.

3  That is what courts are for." *Id.* at 308-309 (Justice Frankfurter, concurring).  The power of courts

4  "to punish for contempt is a necessary and integral part of the judiciary, and is absolutely

5  essential to the performance of the duties imposed on them by law." *Securities and Exchange*

6  *Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir. 1981), *quoting*

7  *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 450 (1911).

8      An injunctive order of a United States district court is binding upon respondents, their

9  officers, agents, servants, employees, and attorneys.  Fed. R. Civ. P. 65(d)(2).  A respondent has

10  an obligation to take all reasonable and diligent steps within its power to insure compliance with a

11  court's order.  *See, e.g., Stone v. City and County of San Francisco,* 968 F.2d 850, 856 (9th Cir.

12  1992).  The "basic proposition is that all orders and judgments of courts must be complied with

13  promptly." *Jim Walters Resources, Inc. v. International Union, United Mine Workers of America,*

14  609 F.2d 165, 168 (5th Cir. 1980), *citing Maness v. Meyers,* 419 U.S. 449, 458 (1975).

15      A party is in contempt when it violates a definite and specific order of the court requiring it

16  to refrain from performing a particular act or acts with knowledge of the court's order.  *In re*

17  *Bennett,* 298 F.3d 1059, 1069 (9th Cir. 2002).  A contempt violation is established by a party's

18  "failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Assn. v.*

19  *McCord,* 452 F.3d 1126, 1130 (9th Cir. 2006).  The contempt "need not be willful." *In re Crystal*

20  *Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987).

21      A party seeking an adjudication of civil contempt need only establish through clear and

22  convincing evidence that the contemnors violated a specific and definite order of the court.

bats to hold up their picket signs.
Memo of Points and Authorities- Page 10
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1    *Federal Trade Commission v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999).  The

2    burden then shifts to the contemnor to demonstrate why it was unable to comply.  *Id.*  As

3    injunctive relief pursuant to Sections 10(j) and 10(l) of the Act requires a party to comply with the

4    relevant principles of the Act, it "implicitly incorporate[s] the basic principles that the Labor Board

5    and the courts have developed to guide the application of these provisions."  *Szabo v. U.S.*

6    *Marine Corp.,* 819 F.2d 714, 718 (7th Cir. 1987).  Accordingly, the Court should rely upon familiar

7    and well-established principles of the Act in guiding its determination whether Respondents have

8    violated its Temporary Restraining Order.  *Id.*

9

10

11                 B.  Respondents' Misconduct Violates the Temporary
12                     Restraining Order and the Act
13
14        As noted above, Respondents were under a legal obligation to take all reasonable and

15    diligent steps to insure compliance with the Temporary Restraining Order.  Rather than taking

16    any steps to insure compliance, however, Respondents within days of the issuance of the Court's

17    order embarked on a renewed campaign of destructive conduct that violated both the terms of the

18    injunctive order and the various sections of the Act outlined and discussed in detail in Petitioner's

19    prior pleadings .

20        Here, there can be no reasonable dispute that Respondents' conduct directly violates the

21    terms of this Court's Restraining Order.  Specifically, Respondents' conduct violates paragraphs

22    1 and 2 of the Court's Restraining Order.  Those paragraphs enjoin and restrain Respondents

23    from: 1) [e]ngaging with an unlawful object, *inter alia,* in . . .property damage, mass picketing, and

24    blocking of ingress and egress at the facility of EGT . . .in furtherance of Respondent Locals 21

25    and 4's dispute regarding work performed at or related to the EGT facility,"  and 2) "[i]n any other

Memo of Points and Authorities- Page 11
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1  manner, or by any other means,  furthering their unlawful object by restraining or coercing the

2  employees of EGT, General, or any other person doing business in relation to the EGT facility . .

3  ..."  As the above evidence amply demonstrates, Respondents' conduct in blocking the BNSF train

4  destined for EGT's facility two times in one day, and in causing extensive damage to the train and

5  EGT's property, directly conflicts with the above paragraphs of the Court's Restraining Order.

6          There can also be no dispute that Respondents and their agents, including the

7  International, were responsible for the blocking, mass picketing, and extensive property damage.

8  Affidavits already submitted to this Court and testimony to be presented to this Court establish

9  that officials of the International and Locals 21 and 4 were present and encouraged the mass

10  picketing and blocking of the BNSF train bound for EGT's facility.  Picket signs also demonstrated

11  that the protestors were affiliated with Respondents and were acting in furtherance of

12  Respondent Local 21's dispute regarding work being performed at EGT's facility.  Furthermore,

13  the Cowlitz County arrest reports, as well as prospective testimony from security guards at the

14  EGT site, reveal that the individuals who stormed EGT's facility and caused extensive damage to

15  the train and EGT's property were also agents of Respondents.  Accordingly, Respondents,

16  including the International and any participating sister ILWU locals, are responsible for committing

17  such misconduct. *See, e.g., Iron Workers Dist. Council of the Pac. NW. v. NLRB,* 913 F.2d 1470,

18  1477 (9th Cir. 1990), *quoting NLRB v. Miramar of Cal., Inc.,* 601 F.2d 422, 425 (9th Cir. 1979)

19  (union held accountable for conduct of others where union "instigated, authorized, solicited,

20  ratified, condoned, or adopted" the unlawful conduct).

21          Although counsel for Respondents sought to excuse Respondents' contumacious

22  conduct by stating that the mobs of protestors were merely working people who were standing up

23  to attempt to protect and defend something that was of great value to them, this Court correctly

Memo of Points and Authorities- Page 12
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

1  rejected that argument.  As the Supreme Court recognized long ago, the "interests of orderly

2  government demand that respect and compliance be given" to injunctive orders, and a party who

3  "willfully refuses his obedience, does so at his peril."  *United States v. United Mine Workers of*

4  *America,* 330 U.S. 258, 303 (1947).  "No one, no matter . . . how righteous his private motive, can

5  be judge in his own case.  That is what courts are for."  *Id.* at 308-309 (Justice Frankfurter,

6  concurring).

7       Accordingly, clear and convincing evidence establishes that Respondents are

8  responsible for committing the acts that directly violate the terms of the Restraining Order.

9  Respondents should therefore be found in civil contempt.

10       C.       Contempt Sanctions

11            1.       Cease and Desist Order; Affirmative Purgation Order; Notice
12                    Remedies; Compliance Report; Discovery
13
14       The Proposed Order Adjudicating Respondents in Civil Contempt, which Petitioner filed

15  with the Court on September 8, requests, *inter alia,* remedies requiring Respondents to refrain

16  from specific unlawful conduct; to provide notices to Respondents, the International, and all sister

17  locals, and all persons acting in concert or participation with them; and to file a compliance

18  report.[17]  All the requested remedies are normal civil contempt remedies in cases arising under

19  the Act.  *See NLRB v. Service Employees Local 77*, 123 L.R.R.M. (BNA) 3213, 3214-15 (9th Cir.

20  1986); *NLRB v. Teamsters Local 85*, 101 L.R.R.M. (BNA) 2933, 2934-35 (9th Cir. 1979); *NLRB v.*

21  *Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers*, Local 86 (79 LRRM 2723, 2724 (9th

22  Cir. 1972).

23            2.       Prospective Fines

---

[17] In order to verify and ensure that Respondents have complied with the cease and desist and affirmative obligations
of a Contempt order, Petitioner also requests that the Court include a provision permitting Petitioner to obtain

Memo of Points and Authorities- Page 13                    2948 Jackson Federal Building
In Support of Civil Contempt                              915 Second Avenue
Civil No. 3:11-CV-05684                                   Seattle, Washington
                                                         (206) 220-6301

1    In order to coerce Respondents to fully comply with the terms of the Preliminary

2    Injunction (both as it stands now and as prospectively ordered) and the Court's Contempt Order,

3    and to refrain from further breaches of injunctive orders in the future, Petitioner has requested in

4    its Proposed Order Adjudicating Respondents in Civil Contempt the imposition of a prospective

5    fine schedule.  It is established that prospective compliance fines may be assessed in a civil

6    contempt proceeding in order to insure future compliance with court orders.[18]  *See, e.g., NLRB v.*

7    *Iron Workers Local 433*, 169 F.3d 1217, 1221-22 (9th Cir. 1999) (fines for non-compliance "would

8    serve the purpose of coercing further compliance"); *NLRB v. A-Plus Roofing*, 39 F.3d 1410, 1419

9    (9th Cir. 1994); *Humphrey v. Southside Electric Cooperative, Inc.*, 104 L.R.R.M. (BNA) 2589,

10   2592 (E.D. Va. 1979) (contempt proceeding under Section 10(j)). In view of Respondents'

11   undisguised propensity for engaging in conduct in violation of the Restraining Order and the Act,

12   the imposition of prospective fines is essential to dissuade Respondents from engaging in further

13   contumacious conduct.  Accordingly, Petitioner has requested a prospective fine of $25,000

14   against Respondents Local 21 and 4  for each further violation of the Preliminary Injunction or the

15   Court's Contempt Order.

16                           3.        Compensatory Remedies

17    The purpose of civil contempt is not to punish but "to coerce the defendant into

18   compliance with the court's order, and to compensate the complainant for losses sustained."

19   *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).  Thus, in addition to the

20   above requested remedies, Petitioner also requests that the Court order Respondents to pay the

21   following compensatory damages due to their contumacious conduct since September 1: the

---

discovery from Respondents and their agents, in the manner provided by the Federal Rules of Civil Procedure
regarding any matter reasonably related to compliance with the Court's Contempt Order.
[18]  As to the factors to be used to set the size of a civil contempt fine, *see U.S. v. United Mine Workers*, 330 U.S.
258, 304 (1947); *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.), *cert. denied,* 459 U.S.

1   Board's costs and attorneys' fees; EGT's costs and attorneys' fees; BNSF's costs;

2   reimbursement for damage to vehicle; and additional costs incurred by law enforcement agencies

3   incurred responding to Respondents' unlawful conduct.

4          With respect to the requested Board's costs and attorneys' fees, respondents who are

5   found in civil contempt are commonly required to pay the expenses and attorneys' fees incurred

6   by the Board in the investigation, preparation and presentation of contempt proceedings.[19]  *See,*

7   *e.g., NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 636 (9th Cir. 1977); *NLRB v.*

8   *Trans Ocean Export Packing, Inc.*, 473 F.2d 612 (9th Cir. 1973); *NLRB v. Service Employees*

9   *Local 77*, 123 LRRM 3213, 3214-3215 (9th Cir. 1986); *NLRB v. Teamsters Local 85*, 101 LRRM

10  2933, 2935 (9th Cir. 1979).

11         It is also well settled that in civil contempt "broad compensatory awards" are appropriate

12  to make whole other parties injured by the contumacy.  *United Mine Workers of America v.*

13  *Bagwell*, 512 U.S. 821, 838 (1994), citing *Sheet Metal Workers v. EEOC*, 478 U.S. 421 (1986);

14  *Whittaker*, 953 F.2d at 516.  Accordingly, to the extent that EGT incurred costs and attorneys'

15  fees in preparing and presenting evidence in support of the investigation and litigation of these

16  contempt proceedings due to Respondents' contumacious conduct, it too is entitled to

17  compensation.  Similarly, EGT, BNSF, and law enforcement agencies have incurred substantial

18  costs due to Respondents' contumacious conduct and should be made whole.

19         **4.    Interim Relief**

20         Given Respondents' blatant disregard of the Restraining Order, the nature of the relief

21  sought by Petitioner from this Court, and the ongoing violations of the Act, Petitioner also

---

832 (1982).
[19]   No evidence will be presented on the costs and attorneys' fees incurred because the damages and other costs
are still being calculated and because the legal costs and fees are ongoing until the litigation is terminated.

Memo of Points and Authorities- Page 15                    2948 Jackson Federal Building
In Support of Civil Contempt                               915 Second Avenue
Civil No. 3:11-CV-05684                                    Seattle, Washington
                                                           (206) 220-6301

1    requests that the Court extend its purgation order in this case to the date to which any final

2    preliminary injunction order extends.

3          Petitioner initially sought injunctive relief from the Court for the purpose of trying to

4    prevent employees from suffering irreparable harm as a result of the Respondents' unlawful

5    conduct while the underlying unfair labor practice cases wound their way through the

6    administrative process.  This Court concluded in its Restraining Order that, absent such interim

7    relief, imminent danger existed that Respondents' actions will cause irreparable harm to

8    employees' statutory rights and that the Board's final order will be frustrated or nullified.  Far from

9    bringing their conduct into conformance with the law, Respondents set upon a course of flouting

10   the Court's authority and further undermining the rule of law.  Thus, within days of the issuance of

11   the Restraining Order, Respondents again blocked the train headed to the EGT facility to unload

12   its cargo, severely damaged property (including the train), and assaulted security guards.  In the

13   wake of this egregious conduct, it is not surprising that employees remain fearful about coming to

14   work, particularly on days when a train is scheduled to deliver grain to the EGT facility.

15         In these circumstances, it is clear that continued legal restraint against Respondents will

16   remain just and proper even after the Court issues its final preliminary injunction order.

17   Accordingly, Petitioner requests that the Court should extend the duration of its purgation order to

18   the date that its final preliminary injunction order extend, which should coincide with the Board's

19   issuance of its final administrative decision on the underlying unfair labor practice cases.   Such

20   relief is proper here because the Court must have the power to enforce its Orders if the Act is to

21   be effective.  *See Hoffman v. ILWU, Local 10*, 492 F.2d 929, 933 (9th Cir. 1974), *cert. granted sub*

22   *nom. on other grounds and affirmed, Muniz v. Hoffman*, 422 U.S. 454 (1975), *citing Madden v.*

23   *Grain Elevator, Flour & Feed Mill Workers*, 334 F.2d 1014, 1020 (7th Cir. 1974), *cert. denied, 379*

Memo of Points and Authorities- Page 16
In Support of Civil Contempt
Civil No. 3:11-CV-05684                                    2948 Jackson Federal Building
                                                          915 Second Avenue
                                                          Seattle, Washington
                                                          (206) 220-6301

1   U.S. 967 (1965) ("in enforcing its orders, the district court may adapt the form of the application of

2   its power according to the resistance to enforcement with which it is confronted").  *See also*,

3   *Whittaker*, 953 F.2d at 516; *NLRB v. Teamsters Local 327*, 592 F.2d 921, 923 (6th Cir. 1979).

4   IV.   CONCLUSION

5   Based upon the foregoing, Petitioner has shown, by clear and convincing evidence, that

6   Respondents have not complied with the Court's Restraining Order, but have engaged in further

7   violative conduct.  Respondents are, therefore, in direct contempt of the Restraining Order and

8   should be found in civil contempt.  Moreover, the Court should impose the requested contempt

9   sanctions against Respondents to purge Respondents of their contumacious conduct, and to

10  coerce Respondents from engaging in further future breaches of the Court's injunctive orders.

11  DATED at Seattle, Washington, this 14th day of September, 2011.

12

13  /s/ Anne Pomerantz
14  /s/ Daniel Sanders
15  /s/ John Fawley
16  /s/ Helena Fiorianti
17  Anne Pomerantz, Attorney, CA Bar 204059; NY Bar 2398428
18  Daniel Sanders, Attorney, WA Bar 3679
19  John Fawley, Attorney, MA Bar 160410
20  Helena Fiorianti, Attorney, NJ Bar 2006-00127; NY Bar 4442786
21  National Labor Relations Board
22  915 2nd Ave, Suite 2948
23  Seattle, WA 98174
24  Telephone (206) 220-6301
25  Fax: (206) 220-6305
26  Email: Anne.Pomerantz@nlrb.gov
27  Daniel.Sanders@nlrb.gov
28  John.Fawley@nlrb.gov
29  Helena.Fiorianti@nlrb.gov
30  Counsel for Petitioner

Memo of Points and Authorities- Page 17
In Support of Civil Contempt
Civil No. 3:11-CV-05684

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington
(206) 220-6301

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September 2011, I caused copies of the Memorandum of Points and Authorities in Support of Petitioner's Motion to find Respondents in Contempt and to Sign Proposed Order Adjudicating Respondents in Civil Contempt be served upon the following parties via e-mail:

ILWU, Local 21
Attn: Mr. Dan Coffman, President
617 14th Avenue
Longview, WA 98632
Ilwu21@iinet.com

ILWU, Local 4
Attn:  Mr. Brad Clark
Local4president@comcast.net

EGT, LLC
Attn:  Mr. Larry Clark
Larry.clarke@egt-llc

Robert Remar, Attorney
LEONARD CARDER LLP
rremar@leonardcarder.com

Robert Lavitt, Attorney
SCHWERIN CAMPBELL BARNARD IGLITZIN & LAVITT LLP
lavitt@workerlaw.com

Robert F. Liebman, Attorney
BARRAN LIEBMAN
rliebman@barran.com

Hope K. Abramov, Attorney
Bunge North America, Inc.
Hope.abramov@bunge.com

Clifford Godiner, Attorney
THOMPSON COBURN LLP
cgodiner@thompsoncoburn.com

Richard N. VanCleave II, Attorney
VANCLEAVE & COBRAIN
rick@vclaborlaw.com

CERTIFICATE OF SERVICE - Page 1
Civil No. _____

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington  98174
(206) 220-6301

William G. Jeffery, Attorney
THE JEFFERY GROUP, PLLC
wgj@jefferygroup.com

**DATED** at Seattle, Washington this 14th  day of September, 2011.

/s/ Anne Pomerantz
/s/ Daniel Sanders
/s/ John Fawley
/s/ Helena Fiorianti
Anne Pomerantz, Attorney, CA Bar 204059; NY Bar 2398428
Daniel Sanders, Attorney, WA Bar 3679
John Fawley, Attorney, MA Bar 160410
Helena Fiorianti, Attorney, NJ Bar 2006-00127; NY Bar 4442786
National Labor Relations Board
915 2nd Ave, Suite 2948
Seattle, WA 98174
Telephone (206) 220-6301
Fax: (206) 220-6305
Email: Anne.Pomerantz@nlrb.gov
        Daniel.Sanders@nlrb.gov
        John.Fawley@nlrb.gov
        Helena.Fiorianti@nlrb.gov
Counsel for Petitioner

CERTIFICATE OF SERVICE - Page 2
Civil No. _____

2948 Jackson Federal Building
915 Second Avenue
Seattle, Washington  98174
(206) 220-6301